Sarah Biggs, Appellee, v. First National Bank of Fort Dodge, Appellant; First State Bank & Trust Company of Fort Dodge, Defendant.

No. 42231.

April 3, 1934.

D. M. Kelleher, for appellant.

Breen & Breen, for appellee.

ANDERSON, J.—This is an action involving the Workmen's Compensation Act. It appears that Louis Biggs had been an employee of the First National Bank of Fort Dodge, Iowa, in the capacity of night watch and janitor for a number of years, and on May 18, 1930, while in the course of his employment and the line of his duty, was killed by a fall down an elevator shaft in the bank building. Both employer and employee were under the Workmen's Compensation Act. The bank had insured its liability under the compensation act with the Southern Surety Company of New York. Immediately upon the happening of the accident which resulted in the death of Mr. Biggs, Willis F. Rich, who was assistant cashier of the First National Bank, and who took care of its insurance business, made reports of the accident to the agent of the Southern Surety Company and also to the Iowa Industrial Commissioner upon blanks furnished him for that purpose. The next day after such reports were mailed, an adjuster representing the insurance company came to Fort Dodge, called at the bank, and inquired of Mr. Rich the particulars of the accident. First reports that were made by Mr. Rich seem to have been made upon on old form of blank that was not then in use by the insurance company, and at the time the adjuster called at the bank, new reports were made out on the blanks then currently used. Mr. Rich testifies that the Biggs compensation claim was handled exclusively by him. The adjuster ascertained from Mr. Rich where Sarah Biggs, the dependent widow of Louis Biggs, lived, and announced that he would go out and attend to the matter with her. It appears that a memorandum of settlement was prepared by the adjuster, either upon the first visit to Mrs. Biggs' residence, or at a later date, which was signed by Mrs. Biggs only, and by some one mailed to the industrial commissioner at Des Moines. The memorandum of settlement bears date of May 31, 1930. On June 4, 1930, the memorandum was approved by the industrial commissioner. Soon after this the insurance company mailed a check of $150 to the bank payable to Mrs. Biggs for funeral expenses. This was turned over to Mrs. Biggs by the bank, and, after the receipt of this check, the bank mailed to the industrial commissioner an amended accident report. Mr. Rich says that after the foregoing detailed oc-

currences, he never heard any more about the matter except indirectly. It appears that following the making of the memorandum of settlement and its filing and approval with the industrial commissioner, the insurance company paid the weekly compensation under the statute, and as indicated in said memorandum of settlement, of $10.38 a week for 89 weeks, or a total of $923.82. Mr. Rich claims that he does not remember ever seeing any of these checks, and that he has no data showing the amount or number of the checks paid to Mrs. Biggs, and that the only information he ever had in reference to the matter was contained in a letter from the receiver of the Southern Surety Company, dated June 16, 1932. However, on June 10, 1932, Mr. Rich wrote a letter to the insurance department of the state of New York, in which he states that Mrs. Biggs was receiving about $42.50 per month, and that the last check was received March 3, 1932; that she was allowed $10.38 a week for 300 weeks, also $150 for funeral expenses. The Southern Surety Company went into receivership soon after the March 3, 1932, payment referred to, and no more payments were made to the dependent Sarah Biggs. Soon after the payments from the insurance company ceased, Mrs. Biggs took the matter up with the bank and asked for "a little money on that compensation", following advice in a letter to her from the receiver of the company in the following language: "You may apply to your employer for payments of amounts currently due to you and he in turn may file his claim in the liquidation proceeding for amounts so paid out." Mr. Rich then wrote to the insurance department of the state of New York, asking that he "send us any papers necessary to be filled out and filed to protect us." A blank for filing claim was received by Mr. Rich and he went out to see Mrs. Biggs and obtained her signature and took her acknowledgment to the claim and then mailed or caused the same to be mailed to the receiver of the insurance company. Much correspondence was carried on between Mr. Rich and the receiver of the insurance company after it became insolvent, in reference to the payment of the claim, first as a preferred one and later as to the amount of dividend that would be realized upon the claim and when paid, but nothing further was paid to Mrs. Biggs, either by the employer bank or its insurance carrier, the Southern Surety Company.

On January 6, 1933, the plaintiff filed in the district court of Webster county a petition in equity reciting the facts detailed above, and asking that the court determine the amount of the liability of

the defendant bank, and that the amount so found be commuted to a lump sum, and that payment thereof be ordered as against the bank, or that judgment be entered therefor, and that she have other appropriate equitable relief.

The defendant bank in its answer to the petition of plaintiff stated that the plaintiff did adjust and settle with the Southern Surety Company, the full liability for workmen's compensation and reached an accord in connection therewith, and that the said plaintiff accepted the obligation of said Southern Surety Company assumed by it as the result of the said proofs and the approval thereof by the said Southern Surety Company, and that plaintiff elected to and did accept the settlement so made, and accepted the sole obligation of said Southern Surety Company to pay the amounts agreed upon in such settlement which she might have, thereby releasing and relieving the said defendant bank from any obligation or liability to pay to the plaintiff any such workmen's compensation, and that the plaintiff is estopped to claim that a liability against the bank continued after the said settlement and adjustment made between the plaintiff and the insurance company. And further that the plaintiff has presented and filed her claim with the receiver of the insurance company for compensation in accordance with the adjustment and settlement so made, and has no further rights that can be asserted against the defendant bank. And in an amendment filed to its answer the defendant makes the further claim and defense, that the cause of action declared upon in plaintiff's petition is barred by the statutes of limitation.

A reply was filed to the answer of defendant bank alleging that all matters in connection with the compensation had been handled by the officers of the defendant bank exclusively, and that the plaintiff had no business experience and was not advised as to her rights by the officers of the bank or any one else; that immediately upon the death of the said Louis Biggs, the bank became liable and obligated for the payment of the legal percentage of his wages provided for by the compensation act for the period of 300 weeks, and that whether or not the bank insured such liability is immaterial, and that the carrying of such insurance did not relieve the bank from the primary obligation imposed upon it by statute.

Such are the pleadings and the record upon which the matter was submitted to the trial court and upon which the trial court made a finding against the defendant, First National Bank, and found and

determined that there was a balance of compensation unpaid and due to the plaintiff for 211 weeks, or a total of $2,190.18, and that there was an amount past due at the time of such decree of $622.41, and judgment was entered against the bank for that amount. The decree further provided that the bank should make additional payments in the sum of $10.38 per week beginning April 20, 1933, and continuing each week until 153 payments had been made. From such finding, judgment, and decree, the bank has appealed.

The appellant claims that the memorandum of settlement should not have been considered by the court for the reason that it was not a part of the record at the time the controversy was submitted. The record discloses that the memorandum of settlement had been misplaced in the industrial commissioner's office and was not found or made available until after the record was closed, and that upon application of the plaintiff the court permitted the filing of an amendment to the plaintiff's reply attaching and making a part of the record a certified copy of the memorandum of agreement. We are of the opinion that the memorandum of settlement should be considered as a part of the record. Section 1465 of the 1931 Code provides that upon presentation by any party in interest of a certified copy of a memorandum of agreement approved by the industrial commissioner, the district court of the county in which the injury occurred shall render a decree or judgment in accordance therewith. Under this statute the district court would have jurisdiction to enter judgment in accordance with the terms of the memorandum of settlement, and we think that the memorandum of settlement was properly before the court in this proceeding.

The appellant contends that the memorandum of settlement not having been signed by the employer or by the insurance company was not such a memorandum of settlement as is provided for under the provisions of the statute. Section 1436 of the Code provides that if an agreement in regard to the compensation is reached, a memorandum thereof shall be filed with the industrial commissioner by the employer or employee, and when approved by the commissioner shall be enforceable for all purposes, except as otherwise provided. This section further provides that the agreement shall be approved by the commissioner only when the terms conform to the provisions of the statute. The memorandum of agreement in the instant case was prepared by the insurance carrier and was either filed with the commissioner by it or by the employer, the First National Bank. It

was approved by the industrial commissioner and subsequent payments made in accordance with its terms. The bank must be held to have known of the preparation and filing of this memorandum of settlement and agreed to or acquiesced therein. There is no specific provision in the statute requiring the memorandum to be executed by any one. In this instance it was executed by the dependent of the employee. The employer had knowledge of payments thereunder, and we are constrained to hold under the circumstances as disclosed by the record in this case that the memorandum of agreement was and is sufficient under the statute and was so accepted and acquiesced in, not only by the insurance carrier but by the employer.

■ Section 1377 of the Code provides that except where the compensation act has been rejected, every contract of hire shall be construed as an implied agreement between the employer and employee and a part of the contract on the part of the employer to provide, secure, and pay, and on the part of the employee to accept, compensation in the manner as by the Workmen's Compensation Act provided, for all personal injury sustained arising out of and in the course of the employment, and, section 1378 provides that "no contract, rule, regulation, or device whatsoever shall operate to relieve the employer, in whole or in part, from any liability created by this chapter except as herein provided."

Under the foregoing provisions the employer is primarily liable for the payment of the compensation provided and the carrying of insurance cannot relieve an employer from such statutory obligation.

■ Section 1406 of the Code provides that a written petition for commutation may be made to the district court of the county in which the injury occurred and shall have indorsed thereon the approval of the industrial commissioner. The industrial commissioner did indorse his approval upon the petition of the plaintiff filed in this case. Holding, as we do, that the memorandum of settlement must be held sufficient and valid, the instant proceedings cannot be said to be original proceedings for compensation and therefore is not barred by section 1386 of the Code. The present proceeding is not one for obtaining an award of compensation, but it is one for commutation upon an award or memorandum of settlement already made and approved by the industrial commissioner. Such memorandum of settlement does not in any way enlarge the liability of the defendant bank, but is in strict accord with the provisions of the

compensation act, its terms providing for the amount of weekly compensation and the number of weeks it shall be paid.

Section 1467 of the Code provides that an employer, unless relieved therefrom, shall insure his *liability* in some company approved by the commissioner of insurance. This is a further indication that the legislature intended to make the employer primarily liable.

In American Fuel Co. of Utah v. Industrial Commission of Utah, 55 Utah 483, 187 P. 633, 635, 8 A. L. R. 1342, the court had under consideration a question very similar to the one we are considering, and in disposing of it used the following language:

"Reading the statute as a whole, and considering all of its provisions, the plain and unmistakable import of the language of the act compels the conclusion that the right to compensation arises out of the relation existing between employer and employee; that compensation is a tax upon industry or upon the employer's business, a tax that is added to the price of the product and is ultimately paid by the consumer; that the employer is primarily liable for compensation to the employee; that both employer and insurance carrier are liable for the payment of compensation to the injured employee; and that the default of either will not excuse payment by the other."

It follows from the discussion in the foregoing opinion that the ruling of the trial court should not be disturbed.—Affirmed.

CLAUSSEN, C. J., and KINDIG, STEVENS, KINTZINGER, and DONEGAN, JJ., concur.